IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA BARRON, KENNETH WYLIE, and WILLIAM CAMPBELL,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF GRANITE CITY, ILLINOIS<br><br>*Defendant*. | Case No. 19-cv-00834-SMY-MAB |

## DEFENDANT CITY OF GRANITE CITY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Comes now Defendant City of Granite City, Illinois, by and through its attorneys of the law firm of Unsell, Schattnik, & Phillips, P.C., and for its Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction states as follows:

### INTRODUCTION

This matter arises out of enforcement actions taken by City of Granite City, Illinois (the City), attempting to enforce the Crime-Free Housing Ordinance against Plaintiffs. The City's Municipal Code includes Chapter 5.142 - License for Lessors of Rental Units, commonly referred to as the City's Crime-Free Housing Ordinance. See Granite City Mun. Code § 5.142.010 et seq. The Crime-Free Housing Ordinance requires all lessors in the City to obtain a business license for each property rented in Granite City[1]. The Crime-Free Housing Ordinance

---

[1] Under the licensing requirement, a business license is obtained for each separate property. Should a license be revoked, the revocation would only affect the licensee's compliance with the Crime-Free Housing Ordinance for that single property and does not affect any business license issued to other properties.

also defines the term "lessor" to include those offering installment sales contracts for residential homes if the contract does not exceed five years. Granite City Mun. Code § 5.142.010(B). Pursuant to the City's Crime-Free Housing Ordinance, all leases, including installment contracts that do not exceed five years, must include a Crime-Free Housing Lease Addendum. See Executed Crime-Free Housing Lease Addendum attached as Exhibit 1. As relevant to this matter, the Crime-Free Housing Lease Addendum states that it shall be a material violation of the lease if the lessee, someone in the lessee's household, guest, or other person under the lessee's control engages in criminal activity at or near the leased property or within the City of Granite City. Pursuant to the Crime-Free Housing Ordinance, should there be a violation of the lease addendum due to the involvement in criminal activity by the lessees, the lessees' household, guest, or other person under lessees' control, the City will notify the landlord of such violation and the landlord shall take prompt, diligent, and lawful steps to remove the tenants from the rental unit. Granite City Mun. Code § 5.142.050. If a landlord fails to take such action, the City may institute an action against the landlord in order to compel compliance with the ordinance. *Id.* Pursuant to the Crime-Free Housing Ordinance, a hearing before the Mayor of Granite City may be brought in order to determine if the landlord's business license to the property in issue may be revoked. If the property's license is revoked, the landlord may then be cited for operating a non-compliant rental. The Crime-Free Housing Ordinance does not provide the City any power to ever directly institute any eviction proceedings. See Affidavit of Mayor Ed Hagnauer attached hereto and marked as Exhibit 2. Moreover, the Crime-Free Housing Ordinance does not allow for any arrest of the landlord for non-compliance with the Crime-Free Housing Ordinance. See Affidavit of Tim Bedard attached hereto and marked as Exhibit 3.

Should any tenant or landlord believe the Crime-Free Housing Ordinance should not be enforced against him or her, the tenant and/or landlord is provided the right and opportunity to a pre-deprivation hearing before the administrative hearing officer. To initiate the right to a pre-deprivation hearing, the tenant or landlord must file a grievance with the City within fifteen (15) days of the receipt of notice that the Crime-Free Housing Ordinance was violated. If no such grievance is filed, the right to a pre-deprivation hearing is waived. At the pre-deprivation hearing, the aggrieved tenant or landlord is afforded an opportunity to speak, present any evidence they wish to use to support their claim against enforcing the Crime-Free Housing Ordinance, controvert and to challenge any evidence and/or witness relied upon by the City. Granite City Mun. Code § 5.142.080. The hearing officer overseeing the hearing will issue an opinion on whether the landlord must begin eviction proceedings against a tenant who is alleged to have violated the Crime-Free Housing Ordinance Lease Addendum. Should a pre-deprivation hearing be requested, the City shall not take any action against the landlord for failing to begin the eviction process unless and until a ruling is issued in favor of the City allowing for the eviction process to begin. *Id.*

## STATEMENT OF FACTS

Plaintiffs Jessica Barron and Kenneth Wylie entered into a lease/installment sales contract with Co-Plaintiff William Campbell concerning a house at 1632 Maple Street, Granite City, Illinois. See P. Comp., Doc. No. 1, ¶49; see Copy of Contract attached hereto and marked as Exhibit 4. This lease/installment contract was for a term of approximately two years. See Exhibit 4. As the lease/installment contract was not in excess of five years, the City's Crime-Free Housing Ordinance applied and required Plaintiff Campbell to obtain a rental business license for

the property and to include a Crime-Free Housing Lease Addendum within the lease/installment contract. Granite City Mun. Code § 5.142.020. Plaintiff Campbell obtained the business license to rent 1632 Maple Street and all Plaintiffs signed a Crime-Free Housing Lease Addendum on July 25, 2017. See Exhibit 1.

Sometime in the fall of 2018, Plaintiffs Barron and Wylie began allowing Jason Lynch, an alleged friend of their son, to stay at their home. See P. Comp., Doc. No. 1, ¶ 63. Jason Lynch continued to stay at the home through the winter and into summer of 2019. See P. Comp., Doc. No. 1, ¶ 76. During this period of time, Jason Lynch was investigated and arrested multiple times for different burglaries. See May 21, 2019 Incident Report attached hereto and marked as Exhibit 5, Charging Document for the May 21, 2019 incident attached hereto and marked as Exhibit 6, June 17, 2019 Incident Report attached hereto and marked as Exhibit 7, and Charging Document for the June 17, 2019 incident attached hereto and marked as Exhibit 8. One such incident involved a burglary of a local Granite City restaurant on May 21, 2019. See Exhibit 5 & Exhibit 6. The restaurant is located approximately one block from the 1632 Maple Street property. Jason Lynch was arrested for this burglary in the basement of 1632 Maple. See Exhibit 5. In June 2019, another alleged burglary victim confronted Jason Lynch about burglarizing her car at a home also located approximately one block from the 1632 Maple Street property. See Exhibit 7. Evidence of this burglary was recovered from the basement of 1632 Maple. See Exhibit 7. Further, the Granite City Police also received several complaints about 1632 Maple and Jason Lynch staying at 1632 Maple. See Exhibit 3 ¶ 11. In fact, evidence supports that Jason Lynch continued to reside at 1632 Maple after May 21, 2019. Further, it suggests Plaintiffs did not tell Jason Lynch he had to leave the residence even upon knowledge that Jason Lynch was arrested on May 21,

2019, in direct violation of the Crime-Free Housing Ordinance Lease Addendum signed by Plaintiffs Barron and Wylie on July 25, 2017. See Exhibit 5. Additionally, stolen property, linked to Jason Lynch, was located at the residence in June 2019. See Exhibit 7.

Following Jason Lynch's arrest in May 2019 at Plaintiffs' home, the Granite City Police Crime-Free Housing Unit determined that a violation of the Crime-Free Housing Lease Addendum had occurred. The police later personally served a notice of violation of the Crime-Free Housing Lease Addendum upon Plaintiff Jessica Barron. See P. Comp., Doc. No. 1, ¶ 98. The police attempted to contact Plaintiff Campbell to serve notice of the violation of the Crime-Free Housing Lease Addendum. See P. Comp., Doc. No. 1, ¶ 77; 100. The police finally located and served a notice of violation of the Crime-Free Housing Lease Addendum to Plaintiff Campbell on July 17, 2019. See P. Comp., Doc. No. 1, ¶ 101.

On August 1, 2019, Plaintiff Campbell filed a grievance with the City as provided for under the Crime-Free Housing Ordinance. See P. Comp., Doc. No. 1, ¶ 104. Plaintiff Campbell requested a pre-deprivation hearing before the administrative hearing officer. See P. Comp., Doc. No. 1, ¶ 104. Such hearing has been scheduled for September 9, 2019. See Exhibit 2 ¶ 8.

Officer Tim Bedard denies threatening to arrest Plaintiff Campbell. See Exhibit 3 ¶ 8. The ordinance does not grant the police the power to arrest a landlord in order to enforce the Crime-Free Housing Ordinance. See Exhibit 3. Likewise, the City has not taken any direct eviction action against the Plaintiffs Barron and Wylie. See Exhibit 3 ¶ 6. The City does not have the authority or power to directly evict. See Exhibit 3 ¶ 6. Plaintiff Campbell has stated he has not initiated eviction proceedings and will not initiate eviction proceedings against Plaintiffs Barron and Wylie. See P. Comp., Doc. No. 1. ¶ 106. No hearing to revoke Plaintiff Campbell's business

license has been scheduled and no such action may be taken by the City while this matter is pending hearing on September 9, 2019. See Exhibit 3 ¶ 10.

**ARGUMENT**

Defendant City of Granite City respectfully requests this Court deny Plaintiff's Motion for Preliminary Injunction, or in the alternative, stay consideration of the Motion for Preliminary Injunction until the resolution of Plaintiff Campbell's administrative grievance hearing scheduled for September 9, 2019. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Fahenm-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs' Motion for Preliminary Injunction should be denied and/or stayed because Plaintiffs' have not sufficiently shown they are entitled to injunctive relief.

**Plaintiffs Are Not Likely to Suffer an Irreparable Harm**

Any alleged irreparable harm to Plaintiffs is too remote and speculative to require injunctive relief or is not an irreparable harm. Plaintiffs seeking preliminary relief are required to demonstrate that irreparable injury is *likely* in the absence of an injunction. *Winter*, 555 U.S. at 22 (emphasis added). Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with the characterization of injunctive relief as an extraordinary remedy that

may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Id.* "The finding of an irreparable harm to the plaintiff... is a threshold requirement for the granting a preliminary injunction." *Foodcomm Intern. v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)(emphasis added). Here, what Plaintiffs have repeatedly alleged irreparable harms are not immediate and likely to occur without injunctive relief.

First, Plaintiffs allege an irreparable harm is likely to occur to Jessica Barron and Kenneth Wylie in that the City "has relentlessly campaigned to expel" them from their home. See P.s Motion for Preliminary Injunction, Doc. No. 6, at pg. 18. However, Plaintiffs point to the police officers' attempts to serve Plaintiffs with the notice which entitled them to seek a pre-deprivation hearing as support for this. Further, Officer Bedard has denied that he told Plaintiff Jessica Barron he was "personally evicting her." See Exhibit 3 ¶ 5. The City does not have the power to directly initiate eviction proceedings against Plaintiffs Barron and Wylie. The Crime-Free Housing Ordinance only allows for the private landlord to initiate proceedings to evict Plaintiffs Barron and Wylie. Pursuant to the Crime-Free Housing Ordinance the City may take action to penalize a landlord for failure to initiate eviction proceedings but has no ability to begin eviction proceedings on their own. Plaintiff William Campbell is the only person who can begin eviction proceedings pursuant to the violation of the Crime-Free Housing Ordinance Lease Addendum. Plaintiff Campbell has plead that he will not initiate eviction proceedings against Plaintiffs Barron or Wylie and same is further asserted in Plaintiffs' Motion for Preliminary Injunction. As such, Plaintiffs Barron and Wylie are not facing an immediate threat of likely eviction from their home before a resolution of this suit is reached. Therefore, Plaintiffs Barron and Wylie have not shown they are *likely* to suffer the irreparable harm of eviction without the entry of the request

preliminary injunction.

Plaintiffs have also alleged Bill Campbell is likely to suffer an irreparable harm of arrest by Granite City Police. Plaintiffs claim the police have threatened to arrest Plaintiff Campbell if he does not agree to begin eviction proceedings against Barron and Wylie. However, the police deny any such threat of arrest was ever made. See <u>Exhibit 3</u>. Further, the Crime-Free Housing Ordinance does not grant a power of arrest against non-conforming landlords. Plaintiff Campbell cannot be arrested for failing to take action toward evicting Barron and Wylie. As such, Plaintiff Campbell is not likely to suffer an irreparable harm in the form of an arrest and preliminary injunctive relief is not necessary.

Under the Crime-Free Housing Ordinance, the only actions that may be taken against Plaintiff Campbell for failing to take steps to evict Barron and Wylie, are to schedule a hearing and, dependent upon the outcome of the hearing thereafter, attempt to have Campbell's business license for 1632 Maple Street revoked. If the license is revoked, Plaintiff could then be fined for operating a rental without the proper licensing. However, pursuant to Section 15.142.080 of the Crime-Free Housing Ordinance, no action to revoke a license may be taken <u>prior</u> to a pre-deprivation hearing if the landlord or tenant requests such a hearing. Plaintiff Campbell timely requested a pre-deprivation hearing on August 1, 2019. This pre-deprivation hearing is scheduled for September 9, 2019. At this hearing, Campbell has the opportunity to present evidence, to call and challenge witnesses, and argue his case before the administrative hearing officer. Should the hearing officer rule in Plaintiff Campbell's favor, Campbell will not further be directed to initiate eviction proceedings against Barron and Wylie. Campbell would also not be subject to any punishment or loss of license. There would be no eviction and Plaintiffs would have no

controversy against the City anymore. As the pre-deprivation administrative hearing provided for under the Crime-Free Housing Ordinance will not occur until September 9, 2019 and no decision has been rendered by the administrative hearing officer, any further action by the City is not imminent and is entirely speculative at this time. As such, Plaintiffs have not sufficiently shown they are likely to suffer an irreparable harm without a preliminary injunction. Moreover, should the pre-deprivation proceedings terminate with a ruling in the City's favor so that the City may take further action to bring compliance with the eviction requirement, Plaintiffs could at that time renew their request for injunctive relief.

Finally, Plaintiff Campbell has not shown irreparable harm in that any action taken against Plaintiff Campbell can be remedied by an award of monetary damages at the end of the litigation. Should the City revoke Plaintiff Campbell's business license to 1632 Maple Street, the City's only action available would be to issue citations and fines for non-compliance with the licensing requirement. Further, as each property is issued its own independent business license, the loss of the 1632 Maple Street license will not negatively affect Plaintiff Campbell's other rental business licenses. Any monetary damages suffered by Plaintiff Campbell due to the loss of the business license, including any fines or loss of rental income, can be properly awarded as monetary damages at the end of this litigation. As such, there is no need for the Court to invoke the extraordinary action of granting preliminary injunctive relief.

For all the reasons stated above, Defendant City of Granite City respectfully requests this Court deny Plaintiffs' Motion for Preliminary Injunction, or in the alternative, stay consideration of the Plaintiffs' Motion for Preliminary Injunction until the resolution of the pre-deprivation proceedings requested by Plaintiff Campbell.

## Defendant Is Likely To Succeed On The Merits

Defendant City of Granite City respectfully requests this Court deny Plaintiffs' Motion for Preliminary Injunction as Defendant City of Granite City is likely to succeed on the merits. Plaintiffs are bring four separate claims to challenge City of Granite City's Crime-Free Housing Ordinance. These claims are a procedural due process claim, an Equal Protection claim, a Fifth Amendment Takings Claim, and a Right to Association claim.

Plaintiffs Barron and Wylie are not being punished for someone else's crime. Plaintiffs Barron and Wylie have violated City Ordinance, their lease (Exhibit 4), and Lease Addendum (Exhibit 1) by allowing Jason Lynch to live in their home. Further, the Crime-Free Housing Ordinance relates to rental properties, it does not as Plaintiffs' counsel states thereby "target with evictions those who are too poor to qualify for a traditional mortgage." This is a false narrative as persons who own their homes outright or who have a mortgage are not subject to "eviction proceedings" at any time. Further, this also assumes all people who rent are too poor to purchase a home. Thus same is not a correct specter through which to analyze Equal Protection.

Plaintiffs claim they have been denied due process. First, Plaintiffs allege they are suffering a "collective punishment" in that they are being punished due to a crime committed by another. They claim the City is taking action against them under the Crime-Free Housing Ordinance not due to any act or omission by them but that of Jason Lynch, namely is burglary of May 21, 2019. However, the City is taking action under the Crime-Free Housing Ordinance for Plaintiffs Barron and Wylie's own failure to abide by the Crime-Free Housing Ordinance Lease Addendum they signed and agreed to when they knowingly entered into their installment contract with Co-Plaintiff William Campbell. The Crime-Free Housing Ordinance requires lessees in

Granite City to exercise their ability to supervise persons they allow to live and make use of their property. Plaintiffs Barron and Wylie have plead that they allowed Jason Lynch to stay at their home. While Plaintiffs allegations attempt to downplay their connection to Jason Lynch, they do admit he spent a great deal of time at their home, even stating he would stay for periods of multiple days at a time. According to Plaintiffs, Jason Lynch began staying at their property in fall 2018 and began staying more frequently during the January winter weather. Jason Lynch apparently continued to stay at the Plaintiffs' home at for at least 5 more months, as Jason Lynch was still present at the Plaintiffs' house when he was arrested on May 21, 2019 in Plaintiffs' basement. Further, property stolen in the May 21, 2019, burglary was also recovered from the home. While Plaintiffs' Complaint states that "Jason Lynch showed up at Jessica and Kenny's house a couple of times after his May 22 arrest. But even before learning of the City's compulsory-eviction demand, Jessica told him to stop coming to the home, and he stopped." See P. Comp., Doc. No. 1 ¶ 76. However, Plaintiffs do not advise the Court that Jason Lynch was again arrested for a burglary on June 17, 2019. The arrest was made only a short distance from the residence and involved a neighbor. After Jason Lynch was arrested on June 17, 2019, police again recovered items stolen in this burglary from Plaintiffs Barron and Wylie's basement. See Exhibit 7. Thus, Jason Lynch was allowed to make use of Plaintiffs' home until at least June 17, 2019, and he did so by using the home to store the stolen items. Plaintiffs Barron and Wylie thereby violated the Crime-Free Housing Ordinance Lease Addendum by allowing Jason Lynch to stay, reside, and/or make use of their home. It is their own actions of allowing Jason Lynch to stay in the residence and failing to exercise the requisite control and supervision of him that violated the Crime-Free Housing Ordinance Lease Addendum. Thus, Plaintiffs are not subject to

eviction under the Crime-Free Housing Ordinance due to another's crime but for their own acts and omissions. The City is not therefore trying to strip "an innocent family of their home." Moreover, it is evident that Jason Lynch is not someone "loosely associated with" Plaintiffs Barron and Wylie but someone they chose to open their home to. See P. Comp., Doc. No. 1 ¶ 64. Additionally, it is inaccurate to say that the May 21, 2019 crime had nothing to do with the home as the burglary was committed down the block from 1632 Maple and the stolen property was recovered from 1632 Maple. See Exhibit 5.

Further, to the extent Plaintiffs are bringing claims that they were denied procedural due process, the City's Crime-Free Housing Ordinance provides an opportunity for due process. Before any action may be taken against a landlord for failure to begin eviction proceedings, the tenants and the landlord have a right to a pre-deprivation hearing. In fact, Plaintiff Bill Campbell has invoked this right to pre-deprivation hearing by filing a grievance and requesting a hearing. To date Plaintiffs Barron and Wylie have chosen not to file any request for a pre-deprivation grievance hearing. As stated above, Plaintiff Campbell's pre-deprivation hearing is scheduled for September 9, 2019. Plaintiff Campbell is being afforded an opportunity for a full and fair hearing in which he may present and challenge evidence in order to support his argument that Plaintiffs should not be evicted under the Crime-Free Housing Ordinance. As such, the City of Granite City has not denied Plaintiffs due process as the City has scheduled a pre-deprivation hearing pursuant to the procedures provided in the Crime Free Housing Ordinance.

Second, the City's Crime-Free Housing program is a rational regulation placed on commerce occurring within the City so as to promote the health, safety, and welfare of the citizens of Granite City. The City Crime-Free Housing Ordinance is designed to prevent rental

properties in Granite City from being used to facilitate criminal activity in the City. See <u>Exhibit 1</u>. The Crime-Free Housing Ordinance allows for the City to remove from rental properties in Granite City, those tenants who commit crimes or who allow others to use their property to facilitate criminal activity or to commit crimes the property itself. *Id*. This rationally helps prevent such properties from becoming nuisance properties that are hubs to criminal activity in the City. *Id*. By preventing rental properties from being used to commit or facilitate criminal activity in the City, and/or to house those persons committing or facilitating crime, the City helps protect its citizens from becoming victims of criminal behavior. Further, by preventing some amount of criminal activity, the City is also protecting and helping preserve property values for other citizens and property owners within Granite City.

Additionally, the Crime-Free Housing program was implemented to reduce nuisance and criminal activity in rental properties. See granitecity.illinois.gov/departments/police-department/crime-free_multi-housing.php. The Crime-Free Housing Ordinance is a rational regulation of the ongoing commerce of short-term rental lease/installment contracts within the City in order to prevent those properties from being used in the commission of crimes by those allowed to use, reside and access the properties.

It is not arbitrary to take regulatory action in order to reduce nuisance and criminal activity in rental properties. In fact, and relevant here, the City of Granite City only requires installment contracts of less than five years to be subject to the Crime-Free Housing Ordinance. Here, Plaintiffs chose to only create a installment contract for a period of two years. They were free to create a more long-term lasting connection to the City and chose not to do so. Because of this choice, the Crime-Free Housing Ordinance applied to their rental/installment contract.

Because they wished to only agree to a short-term lease-like contract, the City rationally had reasons to regulate their rental agreement to ensure it did not create a problem wherein criminal activity was being committed or facilitated at the property.

Third, the Crime-Free Housing Ordinance does not violate the Plaintiffs' right to association. The ordinance does not prevent Plaintiffs from associating with any person. They are free to associate with anyone they wish. The Crime-Free Housing Ordinance only applies if a tenant allows a person, such as Jason Lynch, to make use of, and here take up residence at, their rental property to commit or facilitate crime. Here, Plaintiffs are free to associate with Jason Lynch should they chose to do so while not at their rental property. The Crime-Free Housing Ordinance only prevents Plaintiffs from choosing to allow Jason Lynch to have access to their home, and then failing to take steps to prevent him from using that access to commit or facilitate crimes within the City. Moreover, as mentioned above, Plaintiffs are not being punished due to an association with Jason Lynch, but for their own choice to allow Jason Lynch to live, reside, or make use of their property and for not taking sufficient steps to exercise control. Therefore, there is no violation of the Plaintiffs rights of association.

Fourth, the Crime-Free Housing Ordinance does not rise to the level of a Fifth Amendment taking. The ordinance is a regulation of the type of activities allowed on a rental property within the City of Granite City. The City is not taking property for its own public use nor for the use of another. As such, the Ordinance does not reach the level of a physical or regulatory taking under the Fifth Amendment nor does the assertion of same support issuance of a preliminary injunction.

Finally, as mentioned above, by removing tenants who commit crimes or allow those

persons who are living, residing, or have been given access to their rental property to commit or facilitate criminal activity, the communities and citizens of Granite City are better protected from that criminal activity. By preventing the removal of such tenants, the public as a whole is damaged by increasing the likelihood of criminal activity. As such, the public interest is served by allowing for evictions of tenants who violate the Crime-Free Housing Ordinance.

## CONCLUSION

Plaintiffs are not likely to suffer irreparable harm as any such harm is speculative and not immediately likely to occur or can be adequately remedied by monetary damages awarded at the end of this matter, if necessary, and Plaintiffs have not shown a sufficient likelihood of success on their claims. Therefore, as Plaintiffs have not met the burden for the extraordinary action of the issuance of a preliminary injunction, Plaintiffs' Motion for Preliminary Injunction should be denied or stayed.

/s/ Erin Phillips
Erin M. Phillips, #62897223 (Lead)
Unsell, Schattnik & Phillips, P.C.
3 South 6th Street
Wood River, IL 62095
(618) 258-1800
(618) 258-1957, fax
Erin.phillips7@gmail.com
*Lead Attorney for Defendant*
*City of Granite City*

## Certificate of Service

I hereby certify that on August 16, 2019, I electronically filed **Defendant City of Granite City's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert James McNamara  rmcnamara@ij.org
Institute for Justice
901 N. Glebe Road
Suite 900
Arlington, VA 22203

Samuel B. Gedge  sgedge@ij.org
Institute for Justice
901 N. Glebe Road
Suite 900
Arlington, VA 22203

Bart C. Sullivan  bsullivan@foxgalvin.com
Fox Galvin LLC
One South Memorial Drive
12th Floor
St. Louis, MO 63102

/s/ Erin Phillips
Erin M. Phillips, #62897223 (Lead)