# EXHIBIT 4

## INSTALLMENT REAL ESTATE SALE CONTRACT

1. <u>Purchase and Sale</u>.  William F. Campbell, (hereinafter referred to as Seller(s)), whose address is P.O. Box 999, Granite City, Illinois  62040 and whose telephone number is (618) 531-5143, hereby agrees to sell ,Jessica Barron and Kenneth Wylie, (hereinafter referred to as (Buyer(s), hereby agree(s) to purchase, for the price and on the terms and conditions contained herein, the following real property, together with all fixtures and permanent improvements thereto, namely:

Legal Description to Govern

more commonly known as 1632 Maple, Granite city IL 62040

Permanent Parcel No.:   ID# 22-2-19-24-05-106-002

2. <u>Purchase Price</u>.  The purchase price is $45,000.00, which Buyer(s) shall pay in the following manner:

A.  The sum of $500.00 upon execution of this contract as an earnest money deposit paid to and to be held by Seller, pending "initial closing" of this transaction;
B.  An additional sum of $1500.00, likewise to be additional paid at same "initial closing;"
C.  The remaining sum of $43,000.00 to be paid in consecutive monthly payments of $ 600.00 each on or before the first (1ˢᵗ) day of each month beginning on the first (1ˢᵗ) day of august, 2017, which payments include interest at the rate of nine point five percent ( 9.5% ) per annum on the principal balance from time to time remaining unpaid.  In establishing this rate of interest the parties should first consult with their tax advisor regarding the "understated and imputed interest rule" in the federal income tax code; and
D.  A balloon payment on or before the first of September, 2019, of all principal then remaining unpaid with interest as aforesaid.

Time is of the essence as to Buyer(s)' payment obligations herein.  The Buyer(s) shall have the right of prepayment in amounts equal to one or more of the principal payments next to become due as shown on the amortization schedule and credited in the reverse order due.  Any installment or portion thereof not paid within seven (7) days of its due date shall incur a $50.00 late penalty and shall be due with the next installment.

**NOTE:  The monthly principal and interest payment outlined in paragraph 2. C. above ($513.31) plus the monthly escrow payment outlined in paragraph 3 below ($86.69) equals AN INITIAL MONTHLY PAYMENT OF $ 600.00**

3. <u>Funds for Taxes and Charges</u>.  In addition to the agreed installments of principal and interest, provided in paragraph 2, Buyer(s) shall deposit with Seller(s) on the day each installment payment is due, until the purchase price is paid in full, a sum (herein referred to as "funds") equal to one-twelfth (1/12) of the estimated yearly real estate taxes.  Failure to make the deposits required hereunder shall constitute a breach of this Agreement.

The funds shall be held by Seller(s) in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency.  Seller(s) is/are hereby authorized and directed to use the funds for the payment of the aforementioned taxes.  Seller(s) shall, upon the request of the Buyer(s), give the Buyer(s) an annual accounting of all such funds deposited and disbursed including evidence of paid receipts for the amounts so disbursed.  The funds are hereby pledged as additional security to the Seller(s) for the periodic payments and the unpaid balance of the purchase price.

If the amount of the funds together with the future periodic deposits of such funds payable prior to the due date of the aforementioned charges shall exceed the amount reasonably estimated as being required to pay said charges, such excess may be applied first to cure any breach in the performance of the Buyer(s)' covenants or agreements hereunder or a credit toward Buyer(s)' future obligations hereunder.

Seller(s) may not charge for so holding and applying the funds, analyzing said account, or verifying and compiling said assessments and bills, nor shall Buyer(s) be entitled to interest or earnings on the funds.  Upon payment in full of all sums due hereunder.  The monthly deposit shall initially be set at $150.00 per month and shall be adjusted normally.

4.  <u>final Closing</u>.  closing shall be held at the offices of Theis Law Firm, P.C., 2145 Pontoon Road, Granite City, Illinois, or by such other place and by such other date as mutually agreed upon by the parties unto Buyer(s) at initial closing, provided Buyer(s) has/have by that date furnished them proof of Buyer(s)' purchase of a policy of hazard and liability insurance on the subject premises fully insuring (replacement cost insurance) the interests of the Seller(s), Buyer(s), and mortgagee(s), if any, with a loss payable clause in favor of each party as their interests may appear.  The property shall be insured for the full market value with limits of liability coverage and an insurance carrier satisfactory to Seller(s).  Buyer(s) shall, at his/her/their expense, maintain such insurance (and flood insurance, if seller deems it necessary) in effect throughout the term of this contract and furnish proof thereof to Seller(s) on request.  Buyer(s) hereby waive(s) any implied warranty of habitability and state(s) that Buyer(s) has/have inspected the real and personal property and accept same "as is" with all defects, both latent and patient.

5.  <u>Insured Casualties</u>.  In addition to the agreed installments of principal and interest, provided in paragraph 2, Buyer(s) shall be solely responsible to get and maintain full home owners insurance coverage and to name seller as "additional insured"

Buyer(s) is/are hereby authorized and directed to use the funds for the payment of the aforementioned premiums. Buyer(s) shall, upon the request of the Seller(s), give Buyer(s) an annual accounting of all such funds deposited and disbursed including evidence of paid receipts for the amounts so disbursed.

If the premises are damaged or destroyed by fire or other insured casualty, the insurance settlement shall be made and proceeds shall be distributed as provided in the pre-existing mortgage, if any.  Any insurance proceeds to which either or both of the parties hereto shall be entitled on account thereof, shall be used (i) in the event the insurance proceeds together with additional monies to be escrowed therewith by Buyer(s) are sufficient to fully reconstruct or restore such improvements, to pay for the restoration or reconstruction of such damages or lost improvement, or (ii) in the event the insurance proceeds after deducting the mortgage balance, and additional monies from Buyer(s) are not sufficient to fully reconstruct or restore such improvements, then the proceeds of insurance shall be applied to the unpaid balance of purchase price.  Seller(s) shall consult with Buyer(s) with respect to any insurance settlement, but Buyer(s) shall have no right to deal directly with the insurance company.  Buyer(s) shall have the right, at his/her/their own expense, to obtain a separate additional casualty insurance policy covering purchaser's interest in the premises and the personal property therein.

In the event the insurance proceeds collected by the Seller(s), after payment of the mortgage balance, if any, exceed the balance owing by Buyer(s) to Seller(s) under the terms of this contract, the excess shall belong to and be immediately paid over to the Buyer(s). minus any out of pocket expenses paid by seller (such as insurance)

6.  <u>Acceleration of Mortgage</u>.  Buyer(s) shall not do anything which would render Seller(s) in violation of any provision of Seller(s)' mortgage currently existing on the subject premises, the payments of which Seller(s) shall continue to make in timely fashion.  The parties recognize that the execution or implementation of this agreement may give the holder of the existing mortgage, the right to declare all sums secured by the mortgage to be immediately due and payable by virtue of "due on sale clause."  If, as a result of the execution or implementation of this agreement, the mortgagee (either rightfully or wrongfully) declares and acceleration, declares the mortgage in default or takes any remedial actions authorized by the mortgage or by the note it secures, Seller(s) and Buyer(s) specifically agree that:

A.      Seller(s) will immediately notify Buyer(s), and the parties will co-operate and make reasonable efforts to continue Buyer(s)' possession of the premises and to implement this agreement.
B.  Buyer's shall make reasonable efforts to procure interim financing at then current market rates, terms, and conditions, sufficient to pay off Seller(s) mortgage (including any charges made rightfully or wrongfully by mortgagee as a condition to its release of the mortgage).  In addition, at Seller(s) request, Buyer(s) shall furnish to Seller(s) all requested credit information and shall sign customary papers relating to applications for financing, so that Seller(s) may seek to procure such financing for Buyer(s).  Buyer(s) shall contemporaneously seek the necessary financing and shall pay the proceeds of any such financing to Seller(s), whereupon Seller(s) shall immediately pay off the existing accelerated mortgage.  The payments by Buyer(s) shall be credited against the payments of the

purchase price hereunder in the reverse order due. Nothing in this paragraph shall prevent Buyer(s) from procuring long-term financing and prepaying the purchase price, as provided elsewhere herein.

C. If within thirty (30) days of Seller(s)' notice, Buyer(s) is/are not able to obtain a commitment for such interim financing (or if Seller(s) do(es) not receive the proceeds within forty (40) days of the request), Seller(s) may obtain such interim financing and pay off mortgage. In such instance, Buyer(s) shall pay to Seller(s) on demand all fees, charges, commissions, and the like incurred by Seller(s) in obtaining that financing. In addition, with each monthly payment due hereunder, Buyer(s) shall pay an amount equal to the amount, if any, by which Seller(s)' monthly payment of principal and interest under the interim financing exceeds the amount of Seller(s)' monthly payment of principal and interest previously due under the mortgage.

D. If the mortgage is foreclosed and neither party is able to obtain sufficient interim financing, this sale shall be canceled as of the date which is the earlier of (i) the date that Buyer(s), with Seller(s)' written consent, yield up possession to the existing mortgagee or mortgagee's successor in interest, or (ii) the date the judgment of foreclosure (whether or not appealed) becomes final. All payments (including taxes and insurance payments) paid to Seller(s) under this agreement shall be retained by Seller(s).

E. Buyer(s) will pay: (i) all the existing mortgagee's costs and expenses (including attorneys' fees) for which the Seller(s) is/are liable under the mortgage as a result of the execution and implementation of this agreement (Seller(s)' decision to pay such expenses shall be conclusive and binding on Buyer(s)); (ii) all Seller(s)' costs and expenses (including attorneys' fees) reasonably incurred by Seller(s) in defending, delaying, or negotiating or attempting to negotiate a settlement of the existing mortgagee's actions; and (iii) all Seller(s)' costs and expenses (including attorneys' fees) reasonably incurred by Seller(s) in procuring or attempting to procure interim financing for Buyer(s) or Seller(s). Buyer(s) shall bear his/their own costs and expenses (including attorneys' fees) in connection with the foregoing. All covenants herein shall survive the closing.

F. In the event Seller(s) fail(s) to timely make his/their mortgage payments despite his/their timely receipt of the Buyer(s)' payments, resulting in foreclosure of the mortgage, the Buyer(s) shall be entitled immediately upon vacating the premises and upon expiration of the Seller(s)' right of redemption, to recover from Seller(s) the entire down payment, all principal payments and all escrow payments made to Seller(s) and not expended on general taxes and insurance premiums on the subject premises. Seller(s) shall not further mortgage or encumber the real estate while this contract is pending. Seller(s) and Buyer(s) have been informed that Theis Law Firm, P.C. recommends that the existing mortgage loan amortization schedule principal balances never exceed this installment contract amortization schedule principal balances.

G. Each of the parties acknowledges that he or she has carefully read the foregoing and has been afforded sufficient time and opportunity to study same and to obtain legal advice and clarification of its terms and provisions. Each party agrees that should any future litigation arise concerning the acceleration of the existing mortgage, each shall and will hold Theis Law Firm, P.C. harmless.

7. <u>Personal Property</u>. The following personal property is included in this sale:

| | | |
|---|---|---|
| ☐ Refrigerator | ☐ Storm Windows | ☐ Air Conditioning Unit(s) ____ # |
| ☐ Stove/Oven | ☐ Storm Doors | ☐ Pool & Equipment |
| ☐ Shades | ☐ Water Softener | ☐ Spas & Equipment |
| ☐ Sump Pump | ☐ Light Fixtures | ☐ Fireplace Tools |
| ☐ Screens | ☐ Attic Fan | ☐ Fireplace Screens |
| ☐ Television Antenna | ☐ Central Vac | ☐ Garage Door Opener Remote(s) ____ # |
| ☐ Blinds | ☐ Humidifier | ☐ Ceiling Fan(s) ____ # |
| ☐ Cooktop/Range | ☐ Air Filtration | ☐ Dryer |
| ☐ Microwave | ☐ Utility Shed(s) | ☐ Intercom |
| ☐ Compactor | ☐ Hot Tub | ☐ Satellite |
| ☐ Clothes Washer | ☐ Ventilation Fans | ☐ Dish/Receiver |
| ☐ Drapes, Curtains | ☐ Curtain Rods | ☐ Water Heater |
| ☐ Carpeting | ☐ Dishwasher | ☐ _____ |
| ☐ Awning | ☐ Plants/Shrubbery | ☐ _____ |
| ☐ Garbage Disposal | ☐ Alarms/Security System | ☐ _____ |
| ☐ Propane tank/remaining gas | | |

8. If requested by Buyer(s), Seller(s) shall provide a bill of sale at final closing.

9.  Prorations.  The real estate taxes shall be prorated for the year 20___ as of initial closing, upon receipt of that tax bill, the Seller(s) promptly paying that proporting accruing through that date and the Buyer(s) promptly paying that proportion accruing thereafter.  The Buyer(s) shall be responsible for the payment of all real estate taxes thereafter.  Seller(s) shall pay all utilities to possession date.  n/a

10.  Liens. Repairs. Inspection.  The Buyer(s) shall not suffer or permit any mechanic's, materialman's or other liens to attach to the subject property.  Notwithstanding the foregoing, the Buyer(s) will, at his/her/their own expense, maintain the premises in a good state of repair, and be responsbile for:  Any utility related upgrade/repair/relocation/tap-on expenses, building code or zoning violations and fines, and comply with all laws and ordinances.  Seller(s) shall have right of inspection at reasonable times and intervals.  Buyer(s) shall not make any substantial alterations in the premises without the prior written consent of Seller(s).  Any repairs, additions, or improvements made to the real estate shall remain at the premises and Buyer(s) shall have no right of removal or right to reimbursement from Seller(s), even if this contract is later cancelled or terminated.  Buyer(s) hereby agree(s) to indemnify and hold Seller(s) harmless from any and all claims, demands, actions, damages, expenses, and losses arising in any way from the Buyer(s)' possession or use of the real or personal property described herein.

11.  Vesting of Title.  No legal right, title or interest in the subject premises shall vest in the Buyer(s) until delivery of the deed of conveyance by the Seller(s), or until the full payment of the purchase price in the manner herein provided.  Buyer(s) hereby waive(s) and release(s) all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois.

12.  Assignment.  The Buyer(s) shall not transfer or assign this Contract or his/her/their interest herein nor enter into any contract for the sale of subject premises or any portion thereof, nor enter into any lease or rental agreement pertaining to the subject premises without the prior written consent of Seller(s).

13.  Default.  In the event Buyer(s) fail(s) to pay any installment, expense, cost, payment, or assessment herein within thirty (30) days after written notice of default from Seller(s) by U.S. mail to Buyer(s)' last known address, the Seller(s) may treat such default as a material breach of this Contract, and Seller(s) shall have any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity:

A.  Maintain an action for any unpaid and delinquent installments;
B.  Declare the entire remaining unpaid principal balance and accrued interest immediately due and payable and maintain an action for such amount;
C.  Terminate this Installment Real Estate Sale Contract, forfeit the Buyer(s)' interest herein, retain all sums paid as partial reimbursement of actual damages incurred for breach of contract and compensation for use and occupancy of the premises, and, upon Buyer(s)' failure promptly to relinquish possession of the subject premises to Seller(s), maintain an action for possession under the Forcible Entry and Detainer Act; and
D.  Terminate this Installment Real Estate Sale Contract and foreclose the Buyer(s)' interest in the subject premises.

A waiver by the Seller(s) of any breach of any term herein shall not be a waiver of any subsequent or other breach herein, nor of any other term or condition herein.

14.  Integration/No Reliance Clause.  This written contract is the final and complete expression of the agreement between the parties and neither party has relied on any additional representations made by the other.  All representations and warranties herein shall survive the closing and delivery of the deed and possession to Buyer(s), except those representations and warranties which were to be and were in fact fully performed by the closing date.

15.  Lead Warning Statement.  Every purchaser of an interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning.  Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligent quotient, behavioral problems, and impaired memory.  Lead poisoning also poses a particular risk to pregnant women.  The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards.  A risk assessment or

inspection for possible lead-based paint hazards is recommended prior to purchase. Buyer has received the pamphlet "Protect Your Family From Lead In Your Home." Seller has no knowledge of lead-based paint hazards in the housing and has no reports or records pertaining to lead-based paint hazards in the housing. Buyer hereby waives the opportunity to conduct a risk assessment or inspection at Buyer's expense for the presence of lead-based paint hazards.

16. <u>Controlling Law</u>. This contract shall be construed in accordance with the Laws of the State of Illinois. Should any provision herein be held unenforceable or invalid by a court of competent jurisdiction, the remaining provisions of this contract shall be and continue to be fully effective. The paragraph headings have been inserted solely for convenience in reference and shall be ignored in any construction of this contract. Seller(s) and Buyer(s) shall comply with all federal, state, and local laws, ordinances, rules and regulations which are applicable to this sale and the subject premises.

17. <u>Residential Real Property Disclosure Report</u>. See Addendum "A." Buyer(s) acknowledge receipt of Seller(s) completed disclosure report prior to signing this contract.

18. <u>Final Closing</u>. On completion of this contract, the Buyer(s) shall be entitled to a conveyance of fee simple title by Seller(s)' Quit Claim Deed upon payment of all amounts due hereunder in the form of a cashier's check payable to Seller(s).

19. <u>Risk of Loss</u>. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois (765 ILCS 65) shall apply to this Contract.

20. <u>Binding on Successors</u>. All covenants and agreements herein contained shall extend to and be binding upon the parties hereto, their heirs, devisees, and personal representatives.

21. <u>Dwelling Code Violations</u>. The Seller(s) expressly warrant(s) to Buyer(s) that no notice from any city, village or other governmental authority of a dwelling code violation which existed in the dwelling structure on the premises herein described before this contract was executed, has been received by the Seller(s), his/her/their principal or agent within ten (10) years of the date of execution hereof.

22. <u>Mine Subsidence Disclosure</u>. The Seller(s) hereby disclose(s) to Buyer(s) in compliance with the Mine Subsidence Disclosure Act 765 ILCS 95, that no insurance claims have been paid or made by Seller(s) for mine subsidence of the real property, and furthermore Seller(s) has/have no knowledge of mine subsidence of the real property.

23. <u>Disposition of Earnest Money Deposit</u>. In the event the sale under this contract does not initially close for any reason, the escrow agent holding the earnest money deposit may elect to give Seller(s) and Buyer(s) written notice of the escrow agent's intended disposition of the earnest money deposit. If neither party objects in writing to escrow agent as to the intended disposition of the earnest money deposit within seven (7) days after the date of mailing of the escrow agent's written notice, the escrow agent may dispose of the earnest money deposit as previously indicated. The escrow agent may also dispose of the earnest money deposit in accordance with the written agreement of all parties to the sale contract or pursuant to court order. In the event a dispute arises regarding disposition of the earnest money deposit and litigation ensues, Theis Law Firm, P.C. and Pontoon Title Company, the escrow agent shall be entitled to reimbursement by Seller(s) and Buyer(s), jointly and severally, of all reasonable attorney fees, court costs and expenses incurred therein, and judgments therefore may be satisfied in full or in part from the earnest money deposit. The escrow agent shall be under no duty to invest the earnest money deposit, and any interest income therefrom shall be retained by the escrowee as agent for Attorneys' Title Guaranty Fund, Inc.

24. <u>Gender and Number</u>. If more than one Buyer or Seller is involved, or if the Buyer or Seller is an entity other than a natural person, the pronouns and grammatical structure shall be understood to conform.

25. <u>Expenses of Sale</u>. The estimated expenses of sale shall be paid at initial closing and borne as follows:

| | <u>Buyer(s)</u> | <u>Seller(s)</u> |
|---|---|---|
| Title searches and premium for vendor-vendee policy of title insurance | Not Requested | |

| | | |
|---|---|---|
| Termite inspection/treatment, if necessary | Not Requested | |
| Document Preparation/Attorney fee | 1/2 | 1/2 |
| Amortization schedules | | X |
| Closing Fee | 1/2 | 1/2 |
| Recording fees: | X | |
| Memorandum of Contract | Not Requested | |
| Quit Claim Deed | X | |
| (on final closing) | | |
| Release of Mortgage | | X |
| (on or before final closing) | | |
| Preparation of Joint Signature Escrow Agreement and escrowed deeds | Not Requested | |
| Transfer Taxes (on final closing) | X | |
| Occupancy permit, if applicable | X | |
| Realtor's commission to _____ ($_____) | | |
| Survey | Not Requested | |
| Other Inspections | Not Requested | |

26.  Release of Information.  Seller(s) and Buyer(s) authorize the release of any and all information in relation to this property and contract to the parties' attorney(s), title companies, lenders, agents, brokers, regulatory/government agencies, credit organizations, appraisers, tenants, insurance Companies, utility companies and other similar entities.

27. Contract runs for two years to be extended provided no breaches exist and at an extra 100.00 per month to be applied toward balance for the following year

28. no insurance provided from seller, there is only structural and liability paid by seller to be used at sellers discretion. 5000.00 deductible, no content coverage.. **buyer to get renters policy or better**

Acceptance and all notices must be made in a signed and dated writing delivered to the other party by hand, first class U.S. mail, express mail, or fax.

BUYER ⎯⎯⎯⎯⎯⎯⎯⎯  Dated: 7 / 25 / 17

Printer Name: Jessica Barron

BUYER: ⎯⎯⎯⎯⎯⎯⎯⎯  Dated: 7 / 25 / 17

Printed Name: Kenny Lyle

Seller: ⎯⎯⎯⎯⎯⎯⎯⎯  Dated: 7 / 25 / 17

Printed Name: William Campbell

# LEASE ADDENDUM FOR CRIME FREE HOUSING

In consideration of the execution of a lease of the dwelling unit identified in the lease, Lessee and Lessor agree as follows:

1. Lessee or any member of lessee's household, shall not engage in criminal activity, including drug-related criminal activity, within the city limits of the City of Granite City. "Drug-related criminal activity" means the illegal manufacture, sale distribution, use or possession with intent to manufacture, sell, distribute, or use a controlled substance (as defined in section 102 of the Controlled Substance Act 21 U.S.C sect 12).

2. Lessee's guest or other person under the lessee's control shall not engage in criminal activity, including drug-related criminal activity, on or near the premise. "Drug-related criminal activity" means the illegal manufacture, sale distribution, use or possession with intent to manufacture, sell, distribute, or use a controlled substance (as defined in section 102 of the Controlled Substance Act 21 U.S.C sect 12).

3. Lessee or members of lessee's household, shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity within the city limits of the City of Granite City.

4. Lessee's guest or other person under the lessee's control shall not engage in any act intended to facilitate criminal activity, including drug related criminal activity, on or near the property premise, regardless of whether or not the individual engaging in such activity is a household member or guest.

5. Lessee or a member of the lessee's household will not engage in the manufacture, sale, possession or distribution of illegal drugs at any location whether on or near property premise or otherwise.

6. Lessee, any member of the lessee's shall not engage in acts of violence or threats of violence, including but not limited to, the unlawful discharge of firearms within the city limits of the City of Granite City.

7. Lessee's guest or other person under the lessee's control shall not engage in acts of violence or threats of violence, including but not limited to, the unlawful discharge of firearms, on or near property premise.

8. Lessee, or a member of lessee's household, shall not engage in any criminal activity found to be equivalent to a Forcible Felony at any location, on the property premise or otherwise. "FORCIBLE FELONY" is defined as treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnapping, kidnapping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individuals. (720 ILCS 5/2-8).

9. VIOLATION OF ANY OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE LEASE AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of the provisions of this addendum shall be deemed a serious violation and material noncompliance with the lease. It is understood and agreed that a single violation of any of the provisions listed above shall be good cause

for termination of lease, unless otherwise provided by law. Proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.

10. In case of conflict between the provisions of this addendum and any other provision of the lease, the provisions of this addendum shall govern.

11. This lease is incorporated into the lease between the Owner/Landlord or its agent and lessee.

1632 maple GC 1l 62040
PROPERTY ADDRESS

_____  7/25/17
LESSEE                    DATE

_____
OWNER/LANDLORD/AGENT

_____  7/25/17
LESSEE                    DATE

_____
OWNER/LANDLORD/AGENT

77742

# property walk through and discloser 7/21/17

house is sold "AS IS"

seller has never occupied property

living room
-electrical, flooring, windows in good shape, walls freshly painted electric

bedroom 1
-carpet used, electrical, flooring, windows in good shape, walls freshly painted electric

bedroom 2
-new flooring , carpet has seem near door, windows in good shape, walls freshly painted electric

bath room   and half bath:
-plumbing in working order , electrical, flooring, windows in good shape, walls freshly painted electric

kitchen
-base cabinet is old metal type in good shape.  electrical, flooring, windows in good shape, walls freshly painted electric

AC, is under repair, buyer to repair at own expense. buyer agrees to repair at own expense or replace with new and sell to reduce selling price 500.00 at final closing.

roof has three layers, looks old, no leaks that seller is aware of

basement has slight leak at corner and window and possibly at washer and dry area

-buyers acknowledge that has had time provided to read and understand the contract and agree to all aspects of it
-while under this contract buyer are to monitor and improve their credit score
-buyers have been informed that they must obey all city occupancy codes and that a violation of city codes will create a breach of contract.
-contract may not go longer than 5 years total,
-all city codes must be strictly adhered too. grass must to cut as needed, weed whipped and landscaped as needed, porch may not be used as storage space and kept tidy. trash to be kept off ground and in proper containers.

| Home price | $45,000.00 |
| Down payment | $2,000.00 |
| Loan term | 138 |
| Interest rate | 9.500 % |

○  ⦿
%   $

⦿           ○
Months   Years

**Your payment will be $513.31.**          **138 months = 11.5 years**

| | |
|---|---|
| Home price | $45,000.00 |
| Down payment | $2,000.00 |
| Total amount financed | $43,000.00 |
| Payment amount | $513.31 |
| Total payments | $70,837.18 |
| Interest rate | 9.500 % |
| Interest compounding | Monthly |
| Total finance charge | $27,837.18 |

| Event | Amount | Term | Period |
|---|---|---|---|
| Loan | $43,000.00 | 1 | |
| Payment | $513.31 | 137 | Monthly |
| Payment | $513.71 | 1 | |

| Event | Loan | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan 1 | $43,000.00 | | $0.00 | $0.00 | $43,000.00 |
| Payment 1 | | $513.31 | $340.42 | $172.89 | $42,827.11 |
| Payment 2 | | $513.31 | $339.05 | $174.26 | $42,652.85 |
| Payment 3 | | $513.31 | $337.67 | $175.64 | $42,477.21 |
| Payment 4 | | $513.31 | $336.28 | $177.03 | $42,300.18 |
| Payment 5 | | $513.31 | $334.88 | $178.43 | $42,121.75 |
| Payment 6 | | $513.31 | $333.46 | $179.85 | $41,941.90 |
| Payment 7 | | $513.31 | $332.04 | $181.27 | $41,760.63 |
| Payment 8 | | $513.31 | $330.60 | $182.71 | $41,577.92 |
| Payment 9 | | $513.31 | $329.16 | $184.15 | $41,393.77 |
| Payment 10 | | $513.31 | $327.70 | $185.61 | $41,208.16 |
| Payment 11 | | $513.31 | $326.23 | $187.08 | $41,021.08 |
| Payment 12 | | $513.31 | $324.75 | $188.56 | $40,832.52 |
| Payment 13 | | $513.31 | $323.26 | $190.05 | $40,642.47 |
| Payment 14 | | $513.31 | $321.75 | $191.56 | $40,450.91 |
| Payment 15 | | $513.31 | $320.24 | $193.07 | $40,257.84 |
| Payment 16 | | $513.31 | $318.71 | $194.60 | $40,063.24 |
| Payment 17 | | $513.31 | $317.17 | $196.14 | $39,867.10 |
| Payment 18 | | $513.31 | $315.61 | $197.70 | $39,669.40 |
| Payment 19 | | $513.31 | $314.05 | $199.26 | $39,470.14 |
| Payment 20 | | $513.31 | $312.47 | $200.84 | $39,269.30 |
| Payment 21 | | $513.31 | $310.88 | $202.43 | $39,066.87 |
| Payment 22 | | $513.31 | $309.28 | $204.03 | $38,862.84 |
| Payment 23 | | $513.31 | $307.66 | $205.65 | $38,657.19 |
| Payment 24 | | $513.31 | $306.04 | $207.27 | $38,449.92 |
| Payment 25 | | $513.31 | | | |