# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA BARRON, KENNETH WYLIE, and WILLIAM CAMPBELL, | |
| *Plaintiffs,* | Case No. 3:19-cv-00834-SMY-MAB |
| v. | |
| THE CITY OF GRANITE CITY, ILLINOIS, | |
| *Defendant.* | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

In accordance with Judge Yandle's Case Management Procedures, Plaintiffs request leave to file a reply brief in support of their motion for preliminary injunction. As detailed in Plaintiffs' preliminary-injunction motion, the issue presented here is important and pressing: Can the City of Granite City eject Jessica Barron and Kenny Wylie from their home because a friend of their son's committed a crime elsewhere in town? The City does not seriously dispute Plaintiffs' likelihood of success on the merits. (Absent from the City's brief is any authority supporting its compulsory-eviction program. City Br. 10-15.) Even so, the City stands ready to "compel" Jessica and Kenny's eviction in just weeks. *See id.* 2, 9. That threat of imminent harm confirms the urgency of Plaintiffs' preliminary-injunction motion, and Plaintiffs are prepared to file their reply brief within 24 hours of the Court's granting leave to do so.[*]

---

[*] The Clerk of Court may wish to strike or seal Exhibits 5, 6, 7, and 8 to the City's response brief (ECF 14) because several names of minors, dates of birth, and driver's license numbers are visible on those documents. *See* SDIL-LR 5.1(d).

-1-

Local Rule 7.1(c) and Judge Yandle's Case Management Procedures provide that reply briefs are appropriate in "exceptional circumstances." That standard is met here because the City's response brief rests mainly on a development that postdates Plaintiffs' preliminary-injunction motion. After Plaintiffs filed their motion, the City announced a "pre-deprivation hearing" for September 9 (at which one City employee will tell another City employee why the City is right to demand Jessica and Kenny's eviction). The City claims that it will not punish Plaintiffs until after September 9. And because that is three weeks away, the City asserts that "any further action by the City is not imminent and is entirely speculative at this time." *Id.* 9.

Plaintiffs had no opportunity to address this theory in their motion, and a reply brief would aid the Court's decision-making in at least two ways.

*First*, the reply brief would explain that the prospect that the City will begin trying to compel Jessica and Kenny's eviction in three weeks is an imminent harm. To warrant a preliminary injunction, an "injury need not have been inflicted when application is made or be certain to occur." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011) (citation omitted). The question is not whether harm is likely tomorrow, or even next week; "a strong threat of irreparable injury *before trial* is an adequate basis" for preliminary relief. 11A Charles Alan Wright et al., Fed. Prac. & Proc. § 2948.1, at 142 (3d ed. 2013) (emphasis added); *see also Whitaker by Whitaker v. Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017). Plaintiffs' reply brief would contend that these principles control here. The City will almost certainly take steps to "penalize" Bill Campbell and "compel" Jessica and Kenny's ouster within weeks—long before the Court can decide this case on the merits. City Br. 2, 7, 9. Indeed, the City admits that it may well start targeting them as soon as September 9, such that Plaintiffs

"could . . . renew their request for injunctive relief" at that time. *Id.* 9. It is precisely because the likelihood of harm is so imminent that the Court's intervention is needed now.

*Second*, Plaintiffs' reply brief would rebut a related argument: that any harm is "remote" and "speculative" because at the September 9 hearing the City could—hypothetically—change its mind about punishing Jessica and Kenny. *Id.* 6, 9. That argument is also without merit. Plaintiffs need show only that "irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC*, 555 U.S. 7, 22 (2008) (emphasis in original). And in a matter of weeks, the City is highly likely to forge ahead with its campaign to evict Jessica and Kenny. The City's Crime Free Housing Officer, for example, recently reiterated the City's view that "[t]his is a clear-cut case of an instance where a violation occurred." Rachel Rice, *Granite City threatens family with eviction after house guest burglarizes tavern*, St. Louis Post-Dispatch, Aug. 3, 2019. The City toes the same line in its response brief. For example:

- ➢ The City stands by its position that Jessica and Kenny "violated the Crime-Free Housing Ordinance Lease Addendum." City Br. 11; *see also id.* 4-5, 10.
- ➢ The City acknowledges that the compulsory-eviction law's practical effect is to empower "the City" to "remove" people living in rented homes. *Id.* 13.
- ➢ The City admits that it is "attempting to enforce the Crime-Free Housing Ordinance against Plaintiffs" and that it "is taking action" against them. *Id.* 1, 10.

The City even forecasts what it is about to do. If Bill Campbell does not evict Jessica and Kenny, the City claims the power to "compel compliance" by revoking Bill's license, declaring the couple's continued occupancy illegal, and saddling Bill with "citations and fines." *Id.* 2, 9. Put simply, the City's words and actions reflect a single goal: to strip Jessica, Kenny, and their children of their home.

That makes the City's proposed "stay" of injunctive relief particularly ill-conceived. *See id.* 6, 9. The Civil Rights Act gives no grace periods for constitutional violations, and "§ 1983 plaintiffs need not exhaust state-law remedies before asserting their federal rights." *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 880 (7th Cir. 2019). For that reason, there is no basis to delay protecting Plaintiffs' rights in hopes the City will self-correct. In fact, the City's bid for time breaks with "[t]he very purpose of § 1983": to "interpose the federal courts between the States and the people, as guardians of the people's federal rights." *Patsy v. Bd. of Regents*, 457 U.S. 496, 503 (1982) (citation omitted); *see also id.* at 506 ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." (citation omitted)).

If filed, moreover, Plaintiffs' reply brief would explain that the City's stalling tactic promises one result: giving the City more time to do more harm. Without this Court's intervention, the City is almost certain to take steps to "compel" Jessica and Kenny's eviction within weeks. *See* City Br. 2, 9. That is a grave and irremediable act, for the "potential loss of [a] home" is "irreparable." *Vignola v. 151 N. Kenilworth Condo. Ass'n*, No. 16-cv-713, 2016 WL 6476547, at *5 (N.D. Ill. Nov. 2, 2016); *see also United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury."). On this record, Plaintiffs "have shown, to the degree necessary for preliminary relief, that it is likely that irreparable harm will come to pass." *Michigan*, 667 F.3d at 789. For its part, the City has offered no evidence that it will be injured if the status quo is preserved—if, that is, Jessica and Kenny can keep living in their home while this case is litigated. *See* Mot. Prelim. Inj. 19-20 (ECF 6). And, practically speaking, deferring the preliminary-injunction motion pending the

City's September 9 hearing would invite confusion: Plaintiffs would need to wait for the hearing to end (it is set to begin at 4:00 P.M.), then rush back to this Court for emergency relief. Plaintiffs' reply brief would thus urge that injunctive relief be granted no later than September 8 to secure both Plaintiffs' rights and the "just, speedy, and inexpensive" resolution of this case. Fed. R. Civ. P. 1.

\* \* \*

For the foregoing reasons, leave to file Plaintiffs' reply brief should be granted. If the Court grants leave, Plaintiffs intend to file their reply brief no later than 24 hours after being authorized to do so.

Dated: August 19, 2019.                                  Respectfully submitted,

                                                                                          s/Samuel B. Gedge

| | |
|---|---|
| Bart C. Sullivan, #6198093 | Samuel B. Gedge (lead counsel) |
| FOXGALVIN, LLC | Robert McNamara |
| One South Memorial Drive, 12th Floor | INSTITUTE FOR JUSTICE |
| St. Louis, MO 63102 | 901 North Glebe Road, Suite 900 |
| Phone: 314.588.7000 | Arlington, VA 22203 |
| Facsimile: 314.588.1965 | Telephone: 703.682.9320 |
| E-mail: bsullivan@foxgalvin.com | Facsimile: 703.682.9321 |
| | E-mail: sgedge@ij.org; rmcnamara@ij.org |

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2019, I electronically filed this Plaintiffs' Motion for Leave to File Reply Brief in Support of Motion for Preliminary Injunction with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Erin M. Phillips
Bradley C. Young
UNSELL SCHATTNIK & PHILLIPS PC
3 South 6th Street
Wood River, IL 62095
Phone: 618.258.1800
Fax: 618.258.1957
Email: erin.phillips7@gmail.com; bradleyyoung925@gmail.com

                                                             s/Samuel B. Gedge
                                                             Samuel B. Gedge